NEW CASTLE COMMUNITY SCHOOL CORPORATION, Defendant-Appellant,

v.

Mildred WATTERS, Plaintiff-Appellee.

No. 1–981A260.

Court of Appeals of Indiana,
First District.

July 28, 1982.

James R. White, New Castle, for defendant-appellant.

William G. Baker, New Castle, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant New Castle Community School Corporation (School Corporation) appeals a judgment entered in the Henry Superior Court in a trial to the court on stipulated facts, finding in favor of plaintiff-appellee Mildred Watters (Mildred) on her complaint for damages under a supplemental service teacher's contract pursuant to Ind.Code 20–6.1–4–8 (Supp.1981).

We affirm.

## STATEMENT OF THE FACTS

On April 16, 1979, Mildred filed a complaint against the School Corporation, alleging: 1) underpayment of salary, and 2) failure to timely notify her that her employment contract would not be renewed for the next school year. The parties stipulated to the following facts which we summarize: Mildred was employed as a teacher by the School Corporation on four separate occasions between March, 1977 and June, 1978. On each occasion she was employed under supplemental service teacher's contracts and she served as a teacher for more than 120 days in a school year. Mildred had a Bachelor's degree in music with seven years of teaching experience.

Under each of the four contracts, Mildred received $42 per day calculated on a six hour working day at a rate of $7 per hour.

Regular-pay teachers[1] with similar degrees and experience as Mildred were paid at the rate of $62.20 per day.

While Mildred taught continuing education in Adult Basic Education, certain students in her classroom and under her supervision completed tests and received high school credits. After June 2, 1978, Mildred's contract under the Adult Basic Education program was never renewed by the School Corporation and it failed to notify Mildred by May 1, 1978, that her contract would not be renewed. Mildred was never offered any other employment by the School Corporation after June 2, 1978.

On March 16, 1981, the trial court entered its judgment in favor of Mildred finding "that the difference between what the plaintiff was paid and what she should have been paid if paid the rate to which a regular teacher was entitled was $4,754.23." In addition, the trial court found that "the plaintiff as a regular teacher would have been entitled to a salary of $13,597.00 for the school year of 1978–1979." Thus, the trial court awarded Mildred a total of $18,351.23 together with court costs.

## ISSUE

We restate the issue presented by the School Corporation as follows:

Whether Mildred is entitled to the same salary as a teacher on the regular salary schedule and to timely notification of an intent to not renew her contract for the next school year?

## DISCUSSION AND DECISION

The School Corporation argues that Mildred was a teacher of a noncredit course, and therefore, was not afforded the same statutory protections as regular teachers of credit courses, citing as authority Ind.Code 20–6.1–4–8. Basically, the School Corporation is asserting that the judgment of the trial court is contrary to law.

The function of the Court of Appeals is not to sit as a trial court, but rather to review and correct errors of law and to accept facts as they are presented so long as probative evidence supports them. *Riverside Insurance Co. v. Pedigo*, (1982) Ind. App., 430 N.E.2d 796. Only when evidence is without conflict and leads to but one conclusion and the fact finder has reached a contrary conclusion will we disturb the decision as being contrary to law. *Pedigo, supra.*

Ind.Code 20–6.1–4–8 provides:

"The Supplemental Service Teacher's Contract. The supplemental service teacher's contract shall be used when a teacher provides professional service in evening school or summer school employment, except when a teacher or other person is employed to supervise or conduct noncredit courses or activities.

If a teacher serves more than one hundred twenty (120) days on a supplemental service teacher's contract in any school year, then sections 1, 3, 4, 9, 10, 11, 13, 14, and 15 of this chapter and IC 20–6.1–6–1 through IC 20–6.1–6–4 apply as they do to a teacher on a regular teacher's contract.

The salary of a teacher on a supplemental service contract must equal the salary of a teacher on the regular salary schedule of the school corporation where the teacher will serve. Part-time service on the supplemental service contract is computed on the basis of six (6) hours as a full day of service."

It is the School Corporation's contention that "except when a teacher or other person is employed to supervise or conduct noncredit courses or activities" is clear and unambiguous language that a teacher of a noncredit course is not required to receive the same salary as a regular teacher, and, by reference to the other applicable statutory sections cited in Ind.Code 20–6.1–4–8, is not required to be notified on or before May 1 that her contract would not be renewed.

---

1. *See* Ind.Code 20–6.1–4–6 and Ind.Code 20–6.1–4–3 for regular teacher's contracts and contract requirements.

The parties stipulated that Mildred was employed as a teacher under a supplemental service teacher's contract by the School Corporation from September 19, 1977, to June 2, 1978, a period of time well in excess of 120 days for that school year. Also, the parties agreed that Mildred was hired to teach under a supplemental service teacher's contract on each of the four hiring occasions. As the trial court stated in its Ruling on Defendant's Motion to Correct Errors, Ind.Code 20–6.1–4–8 specifically mandates that

> "The salary of a teacher on a supplemental service contract must equal the salary of a teacher on the regular salary schedule of the school corporation where the teacher will serve."

In addition, the statute provides that upon service of more than 120 days in any school year, a teacher employed on a supplemental service teacher's contract is afforded the protection of various other statutory sections applicable to regular teacher's contracts, including Ind.Code 20–6.1–4–14. That section, in part, provides:

> "Contract Rights of Non-Permanent Teachers. (a) Each contract entered into by a non-permanent teacher and a school corporation continues in force on the same terms and for the same wages, unless increased by IC 20–6.1–5–1, the teachers' minimum salary law, for the next school term following the date of termination set in the contract. However, the contract does not continue if:
> (1) on or before May 1, the school corporation notifies the teacher that the contract will not continue for the next school term; this notification must be:
> (A) written; and
> (B) delivered in person, or mailed by registered or certified mail to the teacher at his last and recognized address[.]"

The evidence further discloses that some students in Mildred's courses received high school credits. However, most students in the Adult Basic Education program (A.B.E.) did not receive credit. Only certain students expelled or excluded from regular high school classes had contracted with the assistant principal to complete assignments and take tests at the A.B.E. site under the supervision of Mildred. Upon successful completion of the assignments and tests, the students would be issued high school credits. The evidence shows Mildred supervised these credit-receiving students, gave them tests and answered some of their questions.

■ The School Corporation appears to be using the A.B.E. program as a means of providing high school credit to certain students without giving the supervising teacher the statutory protections and benefits afforded regular teachers. As Mildred points out in her brief, she was given the responsibility of supervising the students receiving credit, but the School Corporation did not disclose in its contract with her or otherwise the contracting procedure it had with the students receiving credit. Therefore, it is our opinion that Mildred taught credit courses and was not affected by the exception relied upon by the School Corporation.

Assuming, *arguendo*, that Mildred taught a noncredit course, the School Corporation, nonetheless, elected to use a supplemental service teacher's contract to employ Mildred. Although one may argue upon reading the statute that a teacher hired to conduct noncredit courses should not be contracted under a supplemental service teacher's contract, the Teacher Contracts statutes specifically provide that 1) if a teacher serves more than 120 days on a supplemental service teacher's contract in any school year, she must be notified on or before May 1 that her contract will not continue for the next school term, and 2) her salary must equal the salary of a teacher on the regular salary schedule.

■ In light of the facts and applicable law of the case at bar, Mildred should have been afforded these above-stated protections even assuming she taught only noncredit courses because she was contracted under a supplemental service teacher's contract for more than 120 days in a school

year. However, we hold that she taught courses for which students received credit and that she taught for more than 120 days in a school year under a supplemental service teacher's contract. Having met those requirements, Mildred should have received the same pay as regular teachers and prior notice of the nonrenewal of her contract. Therefore, the trial court was correct in assessing damages against the School Corporation in failing to properly notify Mildred of the nonrenewal of her contract for the next school year and in failing to pay Mildred the same salary as a regular teacher.

Judgment affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.